Lewis Brisbois Bisgaard & Smith Llp
Pamela M. Ferguson, SB# 202587
  Email: Pamela.Ferguson@lewisbrisbois.com
Shahram Nassi, SB# 239812
  Email: Shahram.Nassi@lewisbrisbois.com
333 Bush Street, Suite 1100
San Francisco, California 94104-2872
Telephone: 415.362.2580
Facsimile:  415.434.0882

Lewis Brisbois Bisgaard & Smith Llp
Michael K. Grimaldi, SB# 280939
  Email: Michael.Grimaldi@lewisbrisbois.com
221 North Figueroa Street, Suite 1200
Los Angeles, California 90012
Telephone:  213.250.1800
Facsimile:   213.250.7900

Attorneys for Defendant National Tenant Network, Inc.

United States District Court

Northern District of California, San Francisco Division

| | |
|---|---|
| Harold Meyer and Phyllis Meyer,<br><br>Plaintiffs,<br><br>vs.<br><br>National Tenant Network, Inc.,<br><br>Defendant. | Case No. 3:13-CV-03187-JSC<br><br>**Defendant National Tenant Network, Inc.'s Notice of Motion and Motion to Dismiss Plaintiffs' Third Amended Complaint under Federal Rule of Civil Procedure 12(B)(6)**<br><br>[Filed concurrently with a Request for Judicial Notice and Proposed Order]<br><br>Date:    May 15, 2014<br>Time:   9:00 a.m.<br>Crtrm:  F, 15th Floor<br>Judge:  The Hon. Jacqueline Scott Corley |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 15, 2014, at 9:00 a.m., at the United States District Court, Northern District, San Francisco Division, in Courtroom F, located at 450 Golden Gate, 15th Floor, San Francisco, California, Defendant, National Tenant Network, Inc. (NTN), will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing Plaintiffs' Third Amended Class Action Complaint on the following grounds:

1. Plaintiffs Third Count for Violation of the California Consumer Credit Reporting Agencies Act, Cal. Civ Code § 1785.18 (a), fails to state a claim upon which relief may be granted;

This Motion will be based on this Notice, the Memorandum of Points and Authorities in support thereof, the accompanying Request for Judicial Notice, and any other oral argument as may be permitted at the hearing of this matter.

DATED: April 7, 2014          LEWIS BRISBOIS BISGAARD & SMITH LLP

By:     /s/ Shahram Nassi
Pamela M. Ferguson
Shahram Nassi
Michael K. Grimaldi
Attorneys for Defendant
NATIONAL TENANT NETWORK, INC.

# Table of Contents

Page

I.    INTRODUCTION ........................................................................................... 1

II.   SUMMARY OF RELEVANT ALLEGATIONS & PROCEDURAL HISTORY ............ 2

III.  RULE 12(B)(6) STANDARD ...................................................................... 4

IV.  PLAINTIFFS' CIV. CODE § 1785.18(A) COUNT FAILS FOR NUMEROUS REASONS. ................................................................................................. 5

    A.    **The § 1785.18(a) Claim Must be Dismissed Because Plaintiffs Do Not Allege NTN Compiles and Reports Public Record Information.** ................................................................................. 6

    B.    **Plaintiffs' § 1785.18(a) Claim also Fails Because the Statute Does Not Require a Reseller of Public Information to Disclose Its Third-Party Vendor in a Consumer Report.** ............................... 8

    C.    **NTN Provided the Sources, Including Courthouse Records, in NTN's Reports on Plaintiffs; the Complaint Does Not Allege Otherwise.** ............................................................................... 11

    D.    **Plaintiffs Have No Damages Related to Their § 1785.18(a) Claim.** ................................................................................... 12

V.    CONCLUSION ....................................................................................... 13

# Table of Authorities

Page

## CASES

*Af–Cap, Inc. v. Chevron Overseas (Congo) Ltd.*
  475 F.3d 1080 (9th Cir. 2007) .......................................................................... 7

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ............................................................................... 4, 5, 10

*Astoria Fed. Savings & Loan Ass'n v. Solimino*
  501 U.S. 104, 112 (1991) ................................................................................ 7

*Bailey v. United States*
  516 U.S. 137 (1995) ........................................................................................ 7

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) .................................................................................... 4, 5

*Branch v. Tunnell*
  14 F.3d 449 (9th Cir. 1994) ........................................................................... 12

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*
  911 F.2d 242 (9th Cir. 1990) ......................................................................... 13

*Johnson v. Riverside Healthcare Sys.*
  534 F.3d 1116 (9th Cir. 2008) ......................................................................... 4

*Kouichi Taniguchi v. Kan Pac. Saipan, Ltd.*
  132 S.Ct. 1997 (2012) ..................................................................................... 6

*Manzarek v. St. Paul Fire & Marine Ins. Co.*
  519 F.3d 1025 (9th Cir. 2008) ......................................................................... 4

*Metro One Telecommunications, Inc. v. C.I.R.*
  704 F.3d 1057 (9th Cir. 2012) ......................................................................... 7

*Neitzke v. Williams*
  490 U.S. 319 (1989) ........................................................................................ 4

*Poore v. Sterling Testing Sys.*,
  410 F. Supp. 2d 557 (E.D. Ky. 2006) .............................................................. 8

*Reddy v. Litton Indus., Inc.*
  912 F.2d 291 (9th Cir. 1990) ......................................................................... 13

*Sprewell v. Golden State Warriors*
  266 F.3d 979 (9th Cir. 2001) ........................................................................... 5

*Sprietsma v. Mercury Marine*
  537 U.S. 51 (2003) .......................................................................................... 7

*Starr v. Baca*
  652 F.3d 1202 (9th Cir. 2011) .................................................................................. 4

*United Savings Ass'n v. Timbers of Inwood Forest Associates*
  484 U.S. 365 (1988) .................................................................................................. 9

*Walters v. Metro. Educ. Enters., Inc.*
  519 U.S. 202 (1997) .................................................................................................. 6

*Warren v. Fox Family Worldwide, Inc.*
  328 F.3d 1136 (9th Cir. 2003) .................................................................................. 5

*Williams v. Taylor*
  529 U.S. 420 (2000) ............................................................................................. 4, 6

### FEDERAL STATUTES

15 U.S.C. §1681a (u) ................................................................................................... 8, 11

### CALIFORNIA STATUTES

California Civil Code §1785.3(d) ........................................................................................ 6
California Civil Code §1785.31(a) ........................................................................... 2, 12, 13

### OTHER AUTHORITIES

Merriam Webster's Dictionary
  www.merriam-webster.com/dictionary/source .................................................. 9

### RULES

Federal Rules of Civil Procedure, Rule 12(b)(6) .......................................... 1, 4, 12, 1

### TREATISES

Antonin Scalia & Bryan A. Garner
  *Reading Law: The Interpretation of Legal Texts*, at p. 69 (2012) ............ 6, 7, 9

Black's Law Dictionary
  (9th ed. 2009) ............................................................................................................ 9

**MEMORANDUM OF POINTS & AUTHORITIES**

## I. INTRODUCTION

NTN files this third motion to dismiss because plaintiffs have belatedly added a frivolous new claim in their Third Amended Complaint (TAC) after NTN served its Initial Disclosures. Besides similar FCRA claims alleged before, plaintiffs now claim that NTN violated California's state reporting act statute — the Consumer Credit Reporting Agencies Act (CCRAA), specifically Cal. Civ. Code § 1785.18(a). Plaintiffs summarily claim that NTN violated § 1785.18(a) because NTN did not "specify the source(s) from which all public record information contained in a report was obtained." TAC ¶ 4. Plaintiff's claim that "sources" means third-party vendors, so NTN was required to disclose these vendors in its reports. But this opportunistic CCRAA theory falls flat for numerous reasons:

- The § 1785.18(a) claim must be dismissed because plaintiffs do not allege NTN *compiles* and reports public record information, which is a threshold requirement for a § 1785.18(a) claim. Plaintiffs indirectly allege NTN is a reseller of public record information. But a reseller necessarily is not the one that compiles the information in the first instance.

- Plaintiffs' § 1785.18(a) claim also fails because the statute does not require a reseller of public information to disclose its third-party vendor in a consumer report. The statute only requires the disclosure of the actual sources of information, like courthouses, police departments, and other government departments. Applying well-established rules of statutory interpretation, a third-party vendor cannot be considered a "source" under § 1785.18(a).

- NTN actually provided the sources, including courthouse records, in NTN's reports on plaintiffs. The complaint does not allege otherwise. The reports — which can be judicially noticed since they are referenced in the complaint and not subject to dispute — clearly give the "Source of Record." NTN was in full compliance.

- Plaintiffs have no damages for their § 1785.18(a) claim. This case is about an alleged mix-up of similar names on a background report, not inaccurate sources of information. The meaning of "source" under § 1785.18(a) is a novel question of law. As of April 5, 2014, no court has cited to the code. The Court need not answer this novel question though, since plaintiffs have no alleged and cannot show damages as a result of an alleged violation of the CCRAA. Without damages, plaintiffs fail to plead a CCRAA claim. Cal. Civ. Code § 1785.31(a).

Because amending would be futile, the Court should dismiss this CCRAA claim with prejudice.

## II.    SUMMARY OF RELEVANT ALLEGATIONS & PROCEDURAL HISTORY

NTN previously filed two motions to dismiss, the most recent of which was filed on October 21, 2013 seeking to dismiss the First Amended Complaint. The Court granted the motion in part on January 17, 2014, and allowed plaintiffs leave to amend their dismissed 15 U.S.C. § 1681k(a) claim. Dkt. 40 at p. 11. Instead of amending their § 1681k (a) claim, plaintiffs dropped that claim entirely. Plaintiffs then sought and were granted leave to file a Third Amended Complaint. Dkt. 49. Plaintiffs filed their TAC with a new allegation of a violation of the CCRAA, Cal. Civ. Code § 1785.18(a). Dkt. 50, Count III. The new CCRAA claim, and the minimal supporting allegations, appear to be the only major additions to the TAC. As such, NTN will only outline the allegations necessary for the Court to understand plaintiffs' CCRAA claim.

NTN is a consumer reporting agency that offers tenant screening profiles to perspective landlords who request a background report on prospective tenants. The profiles contain information about the prospective tenant, including details about the person's address history, previous landlords, credit history, and criminal record.

In this case, plaintiffs allege that they applied for a position as assistant resident managers at Shorewood, Inc., a recreational vehicle park where they would live and work. TAC ¶ 27. Shorewood requested plaintiffs submit to a background check (*id.* ¶

31-32) and then ordered tenant screening profiles from NTN. *Id.* ¶ 34. Plaintiffs allege that NTN provided a wrong screening profile to Shorewood, which was the catalyst for this suit. Plaintiffs allege NTN accidentally mixed up plaintiff *Harold Charles* Meyer's screening profile with that of *Charles Otis* Meyer, who has a criminal record. *Id.* ¶ 41. Plaintiffs dispute that they received their whole report from NTN. TAC ¶¶ 46-47, 51. The reports provided public record information, such as court records. *Id.* ¶ 35, 37.

The main allegation here is whether NTN's screening profiles properly provided the "source" of the public record information in plaintiffs' NTN profiles. The new allegations in support of the CCRAA claim make conclusory allegations that NTN "fail[ed] to specify the source(s) from which the public record information in the reports was obtained, in violation of Cal. Civ. Code § 1785.18(a)." TAC ¶ 78, *see also id.* ¶ 4, 20, 24 (same). Plaintiffs allege no damages in support of their CCRAA claim or attempt to show how the alleged violation could possibly have caused them damage.

Quoted below are the only other substantive supporting allegations in support of this CCRAA claim:

> NTN obtains the public record information included on the background reports it prepares from private third-party vendors including IntelliCorp Records, Inc. [TAC ¶ 13.]

> The CCRAA requires that each time a CRA reports public record information about a consumer, the report must specify the source from which the CRA obtained the information. Cal. Civ. Code § 1785.18(a). This important requirement allows consumers to get to the root of errors on consumer reports prepared about them. This is particularly important when the source is a ***third-party vendor***, because an error may originate with the vendor, and disclosure of the source allows the consumer to correct the error with vendor, thereby preventing the vendor from disseminating errors to other CRAs or other third parties. [TAC ¶ 16 (emphasis added).]

> Upon information and belief, NTN obtained this inaccurate information from a third-party vendor, and not directly *from the courthouses of the counties from which the records originate.* NTN did not specify its actual source for this public record information to Plaintiff Harold Meyer at any time. [TAC ¶ 38.]

Based on these conclusory allegations, plaintiffs seek to add a new subclass of all California residents who "had a consumer report sold about them by NTN which

contained public record information but failed to specify the ***private vendor source(s)*** of such public record information." TAC ¶ 55(c) (emphasis added).

As debunked below, plaintiffs' erroneous theory is that NTN was required to provide the third-party vendor information in NTN's profiles because the third-party vendor information is a public record "source." There is no merit to this newly-concocted and opportunistic reading of § 1785.18(a).

### III.   RULE 12(B)(6) STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law").

A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555.) "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to

enable the opposing party to defend itself effectively."). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 663.

As such, the Court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001). In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. … While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft,* 556 U.S. at 677-79 (citing *Twombly*, 550 U.S. at 555); *see also Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

### IV.   PLAINTIFFS' CIV. CODE § 1785.18(A) COUNT FAILS FOR NUMEROUS REASONS.

Plaintiffs opportunistically attempt here to read a brand new requirement into §1785.18(a). Section 1785.18(a) provides:

> Each consumer credit reporting agency which compiles and reports items of information concerning consumers which are *matters of public record*, shall specify in any report containing public record information the source from which that ***information was obtained, including the particular court, if there be such, and the date that the information was initially reported or publicized***." [Emphasis added.]

NTN cannot be liable under this statute because plaintiffs have not alleged NTN "compiles" public record information. And even if NTN did compile, NTN has provided the source of where the public record information was obtained, including the court information and relevant dates. Plaintiffs have only alleged NTN failed to provide its third-party vendor of public records information in its reports, but NTN has no obligation under § 1785.18(a) to provide such information. In any event, the claim must be dismissed because plaintiffs have not alleged damages related to a § 1785.18(a) violation.

///

///

### A. The § 1785.18(a) Claim Must be Dismissed Because Plaintiffs Do Not Allege NTN Compiles and Reports Public Record Information.

Plaintiffs theory is negated by the fact that § 1785.18(a) only applies to "consumer credit reporting agency which ***compiles*** and reports items of *information concerning consumers which are matters of public record*." (Emphasis added.) Well-established principles of statutory interpretation require dismissal.

When interpreting a statute, courts must start with the language of the statute. *Williams v. Taylor*, 529 U.S. 420, 431 (2000). Moreover, "[i]n the absence of an indication to the contrary, words in a statute are assumed to bear their ordinary, contemporary, common meaning." *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 207 (1997) (internal quotation marks omitted); *see also Kouichi Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S.Ct. 1997, 2002 (2012) ("When a term goes undefined in a statute, we give the term its ordinary meaning.") This is the "fundamental semantic rule of interpretation" — the ordinary / plain meaning canon. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, at p. 69 (2012) ("Words are to be understood in their ordinary, everyday meanings — unless the context indicates that they bear a technical sense.").

Here, plaintiffs have only alleged that "NTN was a 'consumer credit reporting agency' as that term is defined by Cal. Civ. Code § 1785.3(d).[1] TAC ¶ 75. Plaintiffs have not alleged that NTN is a "consumer credit reporting agency which compiles and reports" public record information as required by § 1785.18(a). Section 1785.18(a) does not apply to all consumer credit reporting agencies; it only applies to those that

---

[1] Section 1785.3(d) provides in relevant part "Consumer credit reporting agency" means "any person who, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the business of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer credit reports to third parties . . . ."

both compile and report public record information. This is an important distinction. Plaintiffs cannot just ignore this *additional, mandatory* compile-and-report requirement. Statutory language should not to be construed as mere surplusage.[2]

To ascertain the plain meaning of terms, courts may consult the definitions of those terms in popular dictionaries. *Metro One Telecommunications, Inc. v. C.I.R.*, 704 F.3d 1057, 1061 (9th Cir. 2012); *Af–Cap, Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080, 1088 (9th Cir. 2007) ("When determining the plain meaning of language, we may consult dictionary definitions.").

Here, none of plaintiffs' allegations show that NTN "compiles" public record information. Neither "compiles" nor "reports" is defined in the CCRAA. "Compile" means "to compose out of materials from other documents" or "to collect and edit into a volume."[3] A consumer credit reporting agency that compiles public record information collects it from its original source—like courthouses and police departments—and puts it into a searchable database. But plaintiffs allege that NTN obtains its public record information "from private third-party vendors including IntelliCorp Records, Inc." TAC ¶ 13. Based on plaintiffs' own allegations, NTN is *not*

---

[2] Scalia & Garner, *Reading Law*, *supra*, ch. 26 (The surplusage canon provides that "[if possible, every word and every provision is to be given effect (*verba cum effectu sung accipienda*). None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence."); *see also, e.g., Astoria Fed. Savings & Loan Ass'n v. Solimino*, 501 U.S. 104, 112 (1991); *Sprietsma v. Mercury Marine*, 537 U.S. 51, 63 (2003) (interpreting word "law" broadly could render word "regulation" superfluous in preemption clause applicable to a state "law or regulation"); *Bailey v. United States*, 516 U.S. 137, 146 (1995) ("we assume that Congress used two terms because it intended each term to have a particular, nonsuperfluous meaning") (rejecting interpretation that would have made "uses" and "carries" redundant in statute penalizing using or carrying a firearm in commission of offense).

[3] *Compile*, www.merriam-webster.com/dictionary/compile.

*compiling* public records information. *Id.* In other words, plaintiffs allege that NTN purchases these public records from third-party vendors who do the compiling. *Id.* ¶¶ 13, 16, 38. Merely purchasing previously compiled public records cannot itself be considered "compiling." As a matter of law then, an alleged reseller of public records information like NTN that does not compile public records cannot be liable under § 1785.18(a). Plaintiffs fail to allege this threshold requirement.

In short, § 1785.18(a)'s compile-and-report requirement makes the section inapplicable to resellers of public information. Although the CCRAA does not define the term, "reseller' is separately defined in FCRA.[4] [A] reseller is an entity that purchases and resells consumer reports but does not itself create any consumer information contained in the reports." *Poore v. Sterling Testing Sys.*, 410 F. Supp. 2d 557, 568 (E.D. Ky. 2006). Plaintiffs allege NTN is a reseller. *See* TAC ¶ 13. A reseller does not compile public record information. As such, a reseller would not be regulated by § 1785.18(a) so this claim must be dismissed.

### B. Plaintiffs' § 1785.18(a) Claim also Fails Because the Statute Does Not Require a Reseller of Public Information to Disclose Its Third-Party Vendor in a Consumer Report.

Even if the Court finds that NTN compiles and reports (it does not), plaintiffs' § 1785.18(a) claim still fails. Plaintiffs' theory is that NTN is required to disclose its purported third-party vendor in its screening profiles since a third-party vendor is "the source from which that [public record] information was obtained" by NTN. TAC ¶ 4; *see also id.* 13, 16, 38. The statute does not support this interpretation.

---

[4] 15 U.S.C. § 1681a (u) ("The term 'reseller' means a consumer reporting agency that—(1) assembles and merges information contained in the database of another consumer reporting agency or multiple consumer reporting agencies concerning any consumer for purposes of furnishing such information to any third party, to the extent of such activities; and (2) does not maintain a database of the assembled or merged information from which new consumer reports are produced.").

Another fundamental principle of statutory interpretation is that "[t]he text must be construed as a whole." Scalia & Garner, *Reading Law*, *supra*, ch. 24; *United Savings Ass'n v. Timbers of Inwood Forest Associates*, 484 U.S. 365, 371 (1988) ("Statutory construction . . . is a holistic endeavor."). This principle applies here. Section 1785.18(a) provides that those consumer credit reporting agencies that compile and report public record information must "specify in any report containing *public record information* the source from which that [public record] *information* was obtained …." (Emphasis added.) This makes sense. Those companies that actually compile/create public-records databases must make sure any report shows where the records came from. Public records "sources" then are court houses, city halls, police departments, and other government departments and registries.

This meaning of public-records "sources" is further confirmed by the last phrase in § 1785.18(a) requiring that these reports "includ[e] the particular court, if there be such, and the date that the information was initially reported or publicized." The source of where the public record information was obtained is the particular court since courts are explicitly defined in the statute as public-record "sources." As such, the source of where the public record information is obtained means the institution or place where the public records originally come from. The word "source" then is given meaning by the contextual clues in the statute.

The everyday meaning of "source" is the "point of origin"[5] or "the originator or primary agent of an act, circumstance, or result."[6] Black's Law Dictionary even gives the relevant example: "*she* was the *source* of the information." The "she" in this example here is the "originator" and "primary agent." If "she" told another person this same information, "she" would not stop being the source, i.e., "she" would still be the

---

[5] *Source*, www.merriam-webster.com/dictionary/source.
[6] *Source*, Black's Law Dictionary (9th ed. 2009).

"originator" and "primary agent." And the new person would not automatically transmogrify into the "source."

This same logic applies to § 1785.18(a) to bar plaintiffs' spurious interpretation that a third-party vendor becomes the "source" of the public record information when the vendor sells the information to a reseller. This interpretation disregards the obviously and plain meaning of "source," which means the point of origin of where the public record information originally came from—like the particular court for a criminal conviction. The courthouse is where the information was originally obtained, not a third-party vendor. To put it another way, the third-party vendor is providing the source of the information to NTN so NTN can pass on the source of the information to its customers. NTN's purported vendor does not become the "source" merely because of the resale; the courthouse is still the source of the record. This is the only plausible reading of § 1785.18(a). Both context and the ordinary meaning of "source" cut against plaintiffs' reading.

To circumvent this logic, plaintiffs' will likely seek to offer a reading of §1785.18(a) that disregards the statute's plain meaning and context, and offer a reading that relies on false notions of statutory interstation. *Reading Law* has debunked these false notions of statutory interstation, including the false notions (1) that the spirit of a statute should prevail over its letter, (2) that the quest in statutory interpretation is to do justice, (3) that remedial statutes should be liberally construed, and (4) that the purpose of interpretation is to discover intent. Scalia & Garner, *Reading Law*, *supra*, chs. 58-59, 64 & 67. Plaintiffs may rely on these false notions, but the Court should not. The plain meaning of the text is all that is needed to interpret this statute.

Plaintiffs' interpretation also creates absurd results and more questions then answers. What if the public record information was resold multiple times? Would each subsequent reseller become a "source"? Would a reseller become liable if it did not disclose every third-party vendor in the chain of distribution? These and other puzzling

questions would have to be harmonized with plaintiffs' reading. They would not with NTN's.

Lastly, FCRA has a similar requirement that a consumer reporting agency disclose the sources of information, but apparently no federal court has adopted plaintiffs' interpretation that a vendor is a "source. FCRA requires that a consumer reporting agency to disclose the "sources of the information" in a consumer's file upon request. 15 U.S.C. §1681g(a)(2). NTN could not locate any case that defined "source" under §1681g(a)(2) as a third-party vendor or a reseller under 15 U.S.C. § 1681a(u). Plaintiffs' interpretation then does not find support in FCRA and the cases interpreting it.

### C. NTN Provided the Sources, Including Courthouse Records, in NTN's Reports on Plaintiffs; the Complaint Does Not Allege Otherwise.

Plaintiffs have only generically alleged in their CCRAA claim that NTN "fail[ed]to specify the source(s) from which the public record information in the reports was obtained." TAC ¶ 78. Elsewhere plaintiffs appear to define "sources" as third-party vendors. *Id.* ¶¶ 13, 16, 38. (It's unclear what plaintiffs are alleging based on what is alleged in Count III, ¶¶ 74-78.) A explained above, § 1785.18(a) does not require NTN to disclose its purported vendors. NTN is not even regulated by § 1785.18(a). *See* Section IV(A) above. But even if it was, NTN was only required to disclose the courthouses and other government departments that house public records. *See* Section IV(B) above. Plaintiffs though *do not allege* that NTN failed to provide the courthouse-and-other-public-record sources in NTN's reports.[7] As such, plaintiffs have not stated a claim under 1785.18(a).

---

[7] Indeed, plaintiffs even allege that NTN provided plaintiffs with the vendor Experian. TAC ¶ 46.

The NTN reports that plaintiffs reference and rely on throughout the complaint are also judicially noticeable. As more fully developed in the concurrently filed request for judicial notice, the Ninth Circuit has held that "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Here, the NTN reports are alleged and relied on throughout the complaint. *E.g.*, TAC ¶¶ 33-44, 46-48, 50-52. And NTN has already provided these reports in its Initial Disclosures. Thus, plaintiffs cannot reasonably question the reports' authenticity. The Court should take judicial notice of NTN's reports. *See* Request for Judicial Notice, Ex. 1. NTN's reports shows that NTN provided the courthouse-and-other-public-record sources. The reports specifically state the "Source of Record" and the relevant dates.

### D. Plaintiffs Have No Damages Related to Their § 1785.18(a) Claim.

A mandatory requirement to bring a CCRAA claim is that the plaintiff must be a "consumer who *suffers damages* as a result of a violation of [the CCRAA]." Cal. Civ. Code § 1785.31(a) (emphasis added). Plaintiffs have not, because they cannot, allege they suffered damages as result of NTN's purported violation of § 1785.18(a). Without any damages, plaintiffs have no constitutional or statutory standing to proceed with this claim. And any request plaintiffs make to interpret this statute would violate prohibition against advisory opinions. *E.g., Muskrat v. United States*, 219 U.S. 346 (1911).

A § 1785.18(a) claim is meant to make sure matters of public record are accurately reported on consumer reports. The statute seeks to make sure criminal convictions and the like have some identifying information showing where the conviction took place. The point is to make sure wrong records do not show up on a report run on the correct person. But in this case, the source of information in a report is not what this case is about. Plaintiffs admit that the catalyst for this case is an entirely erroneous report provided to Shorewood. Plaintiffs claim that as a result of this

1 report, they were denied housing/employment. TAC ¶ 41. Plaintiffs' claim *Harold Charles* Meyer's information was mixed up with that of *Charles Otis* Meyer. *Id.* Plaintiffs do not and cannot allege that NTN's alleged failure to provide "the source" of information is what caused plaintiffs' harm. Plaintiffs were allegedly denied housing because of this mix-up, not for any other reason, including the "source" of the information. *Id.* Since plaintiffs have no damages based on NTN's alleged violation of § 1785.18(a), plaintiffs cannot bring their CCRAA claim. Cal. Civ. Code § 1785.31(a).

It is disingenuous then for plaintiffs to argue that "NTN's failure to disclose the sources of the public record information it sells about them further impairs consumers' ability to rectify inaccuracies by preventing them from going to the source of inaccurate information." *Id.* ¶ 24. The issue here is not about rectifying inaccuracies on reports generated on plaintiffs. The issue is how the a mix up of names allegedly led to the wrong report being furnished to Shorewood. *Id.* ¶ 41. If the wrong name was used, obviously the whole report would be inaccurate. On one hand plaintiffs are arguing that the records were mixed up, but on the other plaintiffs argue that they needed to correct a third-party vendor's information.

## V. CONCLUSION

For the reasons set forth above, plaintiffs' CCRAA claim should be dismissed without leave. Plaintiffs' claim is barred as a matter of law, so amending would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

DATED: April 7, 2014

LEWIS BRISBOIS BISGAARD & SMITH LLP

By: /s/ Shahram Nassi
Pamela M. Ferguson
Shahram Nassi
Michael K. Grimaldi
Attorneys for Defendant
NATIONAL TENANT NETWORK, INC.

# CERTIFICATE OF SERVICE
*Harold Meyer, et al. v. National Tenant Network, Inc.*
USDC – Northern District Case No. 3-13-cv-03187-JSC

STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

At the time of service, I was over 18 years of age and not a party to the action. My business address is 333 Bush Street, Suite 1100, San Francisco, CA 94104-2872. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On April 7, 2014, I served the following document:

**DEFENDANT NATIONAL TENANT NETWORK, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6); MOTION TO STRIKE CLASS ALLEGATIONS; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

I served the document on the following persons at the following addresses (including fax numbers and email addresses, if applicable):

**SEE ATTACHED SERVICE LIST**

The document was served by the following means:

☒ **(BY COURT'S CM/ECF SYSTEM)** Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed above.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Dated:  April 7, 2014                        /s/ Sandra Haves
                                             Sandra Haves

4851-7533-6730.3                                             3:13-cv-03187-JSC
**CERTIFICATE OF SERVICE**

LEWIS BRISBOIS BISGAARD & SMITH LLP
ATTORNEYS AT LAW

**SERVICE LIST**
*Harold Meyer, et al. v. National Tenant Network, Inc.*
USDC Northern District Case No. 3:13-cv-3187 JSC

| | |
|---|---|
| Andrew J. Ogilvie, Esq.<br>Carol McLean Brewer, Esq.<br>ANDERSON, OGILVIE & BREWER LLP<br>235 Montgomery Street, Suite 914<br>San Francisco, CA  94104<br>Telephone:  415.651.1953<br>Facsimile:   415.500.8300<br>Email:  andy@aoblawyers.com<br>           carol@aoblawyers.com<br>***Representing Plaintiffs HAROLD MEYER and PHYLLIS MEYER*** | James A. Francis, Esq.<br>Erin Amanda Novak, Esq.<br>David A. Searles, Esq.<br>FRANCIS AND MAILMAN, P.C.<br>Land and Title Building, 19th Floor<br>100 South Broad Street<br>Philadelphia, PA 19110<br>Telephone:  215.735.8600<br>Facsimile:   215.940.8000<br>Email:  jfrancis@consumerlawfirm.com<br>           enovak@consumerlawfirm.com<br>           dsearles@consumerlawfirm.com<br>***Representing Plaintiffs HAROLD MEYER and PHYLLIS MEYER*** |

4851-7533-6730.3                                                                                                   3:13-cv-03187-JSC

**CERTIFICATE OF SERVICE**